115 N.J. Super. 206 (1971)
278 A.2d 540
CONTINENTAL NATIONAL AMERICAN GROUP AND GEORGE TOMA AND PARKWAY AUTO BODY COMPANY, PLAINTIFFS,
v.
PEDRO PLUDA, PETER MATERA AND NATIONAL UNION INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 26, 1971.
*207 Messrs. DeYoe, DeYoe & Guiney, attorneys for plaintiffs.
Messrs. Gelman & Gelman, attorneys for defendant Pedro Pluda.
Messrs. Bergamino and DeGone, attorneys for defendants Peter Matera and National Union Insurance Company.
BRESLIN, R.W., J.C.C.
This is an action for summary judgment arising out of a motor vehicle negligence action in which the two insurance companies involved disputed coverage and the payment of fees for the defense of said action.
It appears that on November 6, 1966 plaintiff George Toma was operating a 1964 Cadillac, owned by the defendant Peter Matera, in a westerly direction on Route 3 in the Township of East Rutherford, New Jersey, when he struck the rear of a 1966 Chevrolet owned and operated by defendant Pedro Pluda. Toma, a licensed used car salesman, had come into possession of the car on November 5, 1966, having been *208 given it by Matera for the purpose of showing it to a prospective purchaser at a social event that evening. Toma is insured by Continental National American Group (Continental), policy No. 215-64-13, whereas Matera has coverage with National Union Insurance Company (National Union), under policy No. ACF 980134.
There is a suit presently pending for personal injuries in the Superior Court, Docket L 42915-67, wherein Pedro Pluda is plaintiff and George Toma, individually and doing business as Parkway Auto Body, and Peter Matera are defendants. Continental undertook to defend said action after a refusal by National Union.
This action is concerned with two closely related issues: (1) Which insurance company will be designated the primary insurer and be responsible for coverage of the accident and for the defense of said suit? (2) If the excess insurer defends said action after the primary insurer declined to do so, is it entitled to a recovery of expenses and counsel fees?
The specific exclusion upon which National Union rests its defense reads as follows:
This policy does not apply under Part I:

* * * * * * * *
(d) to any haulaway, tank, truck, tank trailer, or any automobile used therewith, owned, hired or held for sale by the named insured and not being delivered, demonstrated or tested; or to any watercraft, while away from the premises or to any aircraft; [emphasis added]
This type of exclusion is intended to eliminate coverage of persons using automobiles in the automobile business for purposes other than delivery, demonstration or testing. Other automobile liability insurance policies have in the past contained various forms of exclusion clauses referring to garages, automobile repair shops and filling stations. For the most part, the provisions of such clauses have expressly eliminated persons engaged in those businesses from those added as insureds by the omnibus clause of the policy. LeFelt v. Nasarow, 71 N.J. Super. 538 (Law Div. 1962).
*209 Under the New Jersey statutes an omnibus clause should have a broad interpretation, N.J.S.A. 39:6-46(a) providing, in part, that policies shall:
Designate * * * all motor vehicles with respect to which coverage is intended to be granted thereby, and insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured. * * * [Emphasis added].
This broad form interpretation of the omnibus clause has been applied in many cases where the insurance companies have tried to restrict their coverage. In Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966), the insurance company sought to restrict its omnibus clause to persons who drove the insured's car with his permission and in no way deviated from that scope of permission. The Supreme Court, in holding said clause invalid, stated:
A policy so offered must have the broad form omnibus coverage set forth in N.J.S.A. 39:6-46 and 48(a). A policy which purports to have a more restrictive omnibus coverage is automatically amended to conform to the statutory standard. [At 373]
To let the insurance company limit coverage through an exclusion would permit a deviation from the statutory mandate as to the content and scope of the omnibus clauses of an automobile liability insurance policy. Willis v. Security Ins. Group, 104 N.J. Super. 410 (Ch. Div. 1968). Said exclusion is amended to conform to the statutory standard.
Whether one considers Toma an agent of Matera because of his intent to show a potential customer the automobile, or whether one simply considers him "another insured," he would come under the policy of insurance issued by National Union to Matera and thus they become the primary insurer, with Continental as the excess insurer.
It is the law of this State that an insurer must provide a defense for its insured where the allegations of the complaint, upon its face, fall within the risk insured against. *210 Ohio Casualty Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965); West v. MacDonald, 103 N.J. Super. 201, 212 (App. Div. 1968); aff'd 52 N.J. 536 (1968). The obligation to defend falls squarely upon National Union and it will be held liable for coverage.
Thus our second issue arises: if the primary insurer refuses to defend and the excess insurer defends said action, is it entitled to a recovery of expenses and counsel fees?
This precise issue has not been decided in New Jersey and notice must be taken that other jurisdictions are in conflict on this point. Fireman's Fund Ins. Co. v. North Carolina Farm Bureau Mutual Ins. Co., 269 N.C. 358, 152 S.E.2d 513 (Sup. Ct. 1967). The most prominent theories being, (1) to divide the costs of defense equally among the insurers, or a pro rata share equal to the amount of coverage, and (2) treating the duty to defend as personal, between the insured and insurer, so that only the defending company will have to pay.
In adopting the first theory above, the public policy of the State is important. Insurance is not just a personal obligation between the insured and insurer but it is a way to establish financial responsibility. If insurance companies were not forced to act responsibly, then their purpose and value would diminish.
In the recent case of Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970), in describing the approaches an insurance company can take, the court said:
And of course if the carrier does not defend, it will have to reimburse the insured for the cost of defense if the tort judgment is held to be within the covenant to pay.
That case was between an insured and an insurer, and not two insurers, as under our facts. A footnote in Butler v. Bonner and Barnewall, Inc., 56 N.J. 567 (1970), in referring to such a recovery states that in New Jersey "Whether any such right exists as to the former is an open question," and subsequently cites Gray v. Zurich Ins. Co., 65 Cal.2d *211 263, 54 Cal. Rptr. 104, 419 P.2d 168 (Sup. Ct. 1966), which allows recovery of expenses and counsel fees.
In State Farm Mutual Auto Ins. Co. v. Travelers Ins. Co., 57 N.J. 174 (1970), the Supreme Court goes even further and states that:
A distinction based on whether the dispute is between carriers or individuals would only lead to confusion and spawn unnecessary litigation.
In Zurich Ins. Co. v. New Amsterdam Cas. Co., 117 Ga. App. 426, 160 S.E.2d 603 (Sup. Ct. 1968) W/ while operating Steele's truck, collided with L.L. sued Master Mix, Inc., W's employer, and Master Mix called on plaintiff, its insurer, to defend said action. Plaintiff in turn called on defendant, insurer of Steele, to defend, contending it had primary coverage. Defendant refused and plaintiff sought reimbursement for defending. In holding that plaintiff could recover, the court subrogated plaintiff to the position of Master Mix, saying:
Since we have held that Master Mix, Inc., is an insured of New Amsterdam Insurance Company, and that the liability of this plaintiff is for excess coverage, the necessary conclusions under the precedents above cited are (1) that this plaintiff had a duty to defend regardless of its position as excess rather than primary carrier, and (2) that by its initial contract with its insured it has the right to recover from the defendant insurer in the same manner that its insured would have had, had Master Mix, Inc., defended the case and paid off the judgment.
In National Farmers Union Prop. and Cas. Co., v. Farmers Ins. Group, 14 Utah 2d 89, 377 P.2d 786 (Sup. Ct. 1963), an automobile operator's insurer sought to recover from the automobile owner's insurer, attorneys' fees and court costs incurred in defense of a suit against the operator sued for property damage. The court held the operator's insurer as the excess carrier and granted judgment to recover from the owner's insurer as primary carrier under the right of subrogation for expenses incurred in defending *212 said action after the primary carrier's refusal to defend. The court noted that:
Plaintiff, in assuming the defense of Morgan, was no volunteer. It was obligated so to do under the terms of its policy after the defendant had refused. It is specious to say that Morgan incurred no expense and, therefore, there is no subrogation. Had Morgan paid these expenses and then been reimbursed by plaintiff, the latter would then have subrogation rights against the defendant. We do not think that this latter procedure is necessary to establish the rights of an excess insurance carrier under the circumstances of this case. Subrogation is an equitable device to compel the ultimate discharge of a debt or obligation by the one who in good conscience ought to pay or discharge it.
I therefore find that Continental is the excess insurer and is entitled to be reimbursed for court expenses and attorney's fees, in the amount of $365, for handling the preliminary defense of said action, when the responsibility was actually upon National Union.