FARMERS INSURANCE GROUP v PROGRESSIVE CASUALTY
INSURANCE COMPANY

Docket No. 77-1023. Submitted April 5, 1978, at Detroit.—Decided
July 5, 1978. Leave to appeal applied for.

Farmers Insurance Group is the plaintiff in this action and
Progressive Casualty Insurance Company is the defendant-ap-
pellant. On June 1, 1972, plaintiff's insured, Valerie Eversole,
was involved in an automobile accident with Patrick Borer
while driving a vehicle owned by Progressive's insured, Billie
Jo Jaynes. Mr. Borer filed a personal injury action against both
Valerie Eversole and Billie Jo Jaynes. Progressive denied insur-
ance coverage of Billie Jo Jaynes, claiming cancellation, and, as
a result, Farmers defended and settled the lawsuit. Farmers
brought an action against Progressive and Billie Jo Jaynes for
full indemnity of the cost of the prior defense, including attor-
ney's fees incurred. Progressive claimed that the policy,
financed by Progressive Premium Budget Company, was can-
celled at the budget company's request by mailing a 10-day
notice of intent to cancel to Mr. Jaynes advising him of his
default on the premium and that, if not paid by a specified
date, his policy would be cancelled. On May 23, 1972, Progres-
sive mailed a notice that the policy was cancelled effective May
24, 1972. Plaintiff was granted judgment against Progressive
including an amount for attorney's fees incurred in the prior
lawsuit. Progressive appeals. *Held:*

1. The statute exempting a premium finance company from
the 10-day notice requirement for cancellation contemplates a
premium finance company which is truly independent of any
single insurer or group of insurers and does not apply to the
situation where the insurer and finance company list the same
address, the *premium financing agreement is contained on the*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 7 Am Jur 2d, Automobile Insurance §§ 8, 10.
  Cancellation of compulsory or "financial responsibility" automobile
  insurance. 34 ALR2d 1297.
[3] 44 Am Jur 2d, Insurance §§ 1849–1856.
[4] 41 Am Jur 2d, Indemnity § 40.
[5] 44 Am Jur 2d, Insurance §§ 1798, 1799.

same page as the printed insurance application, the notices of intent to cancel and cancellation are mailed by the insurer rather than the finance company and it appears that the finance company is merely a division within the insurance company itself to handle periodic payment of premiums; in such a situation even a contractual assignment of the insured's right to cancel to the finance company is merely an assignment to the insurance company and cannot be peremptorily exercised by the insurer.

2. Cancellation of an automobile insurance policy requires 10 days prior notice of the date of cancellation and a 10-day notice of intent to cancel is insufficient.

3. An insurance company is a real party in interest in a suit for indemnification where it is subrogated to the rights of its insured.

4. Prior demand for participation in the settlement is not required in an indemnification suit where the defendant insurance company refused to defend or provide coverage and where it does not contest the settlement amount.

5. It is proper in suits by excess insurers against primary insurers for indemnification to award the attorney's fees previously incurred under the proposition that such fees are recoverable where the present defendant has by wrongful conduct caused the present plaintiff to defend or prosecute previous legal proceedings.

Affirmed.

1. INSURANCE—AUTOMOBILE INSURANCE—STATUTES—CANCELLATION—
   PREMIUM FINANCE COMPANIES—ASSIGNMENT OF RIGHT TO CAN-
   CEL.

   The statute exempting a premium finance company from the 10-day notice requirement for cancellation of an automobile liability policy contemplates a premium finance company which is truly independent of any single insurer or group of insurers and does not apply to the situation where the insurer and finance company list the same address, the premium financing agreement is contained on the same page as the printed insurance application, the notices of intent to cancel and cancellation are mailed by the insurer rather than the finance company and it appears that the finance company is merely a division within the insurance company itself to handle periodic payment of premiums; in such a situation even a contractual assignment of the insured's right to cancel to the finance company is merely an assignment to the insurance company

and cannot be peremptorily exercised by the insurer (MCL 500.1511, 500.3020; MSA 24.11511, 24.13020).

2. INSURANCE—AUTOMOBILE INSURANCE—CANCELLATION—NOTICE OF CANCELLATION—NOTICE OF INTENT TO CANCEL.

Cancellation of an automobile insurance policy requires 10 days prior notice of the date of cancellation and a 10-day notice of intent to cancel is insufficient.

3. COURTS—PARTIES—REAL PARTY IN INTEREST—INSURANCE COMPANIES—SUBROGATION.

An insurance company is a real party in interest in a suit for indemnification where it is subrogated to the rights of its insured.

4. INSURANCE—INDEMNIFICATION—DEMAND FOR PARTICIPATION—DENIAL OF COVERAGE.

A prior demand for participation in the settlement is not required in an indemnification suit for the settlement moneys that had been paid where the defendant insurance company had refused to defend or provide coverage and where it does not contest the settlement amount.

5. INSURANCE—INDEMNIFICATION—ATTORNEY'S FEES.

It is proper in suits by excess insurers against primary insurers for indemnification to award the attorney's fees previously incurred under the proposition that such fees are recoverable where the present defendant has by wrongful conduct caused the present plaintiff to defend or prosecute previous legal proceedings.

*Harvey, Kruse & Westen, P. C.* (by *Mark D. Shoup*), for plaintiff.

*Patterson, Patterson, Whitfield, Manikoff & White,* for defendant.

Before: M. J. KELLY, P. J., and D. E. HOLBROOK, JR. and BEASLEY, JJ.

M. J. KELLY, P. J. Plaintiff (hereafter Farmers) commenced this action seeking indemnity against defendant (hereafter Progressive) and its insured, Billie Jo Jaynes, on May 30, 1975, in Oakland

County Circuit Court. On June 1, 1972, plaintiff's insured, Valerie Eversole, was involved in a collision with one Patrick Borer while driving a vehicle owned by defendant's insured with his express consent. Mr. Borer filed a personal injury action against both owner and driver as codefendants, but Progressive denied liability insurance coverage. As a result of that denial, plaintiff Farmers defended the suit and settled for $10,000.

Farmers sought full indemnity from defendant Progressive, alleging that Progressive wrongfully denied coverage and was the primary carrier because it insured the vehicle involved. Progressive denied liability for indemnity, arguing that the policy of insurance issued to its insured was effectively cancelled before the collision.

On October 31, 1975, defendant Progressive filed a motion for summary judgment under GCR 1963, 117.2(1), based on the cancellation. It stated that it had entered into the insurance contract with Mr. Jaynes on October 30, 1971, " * * * as part and parcel of which the premium was budgeted through Progressive Premium Budget, Inc., * * * ". In response to interrogatories, defendant Progressive stated that Progressive Premium Budget Company is not a wholly-owned subsidiary of defendant, but a totally separate entity. Nevertheless, the Premium Budget Company had the same address as that of defendant Progressive, and the financing contract was, as defendant puts it, "part and parcel" of the insurance contract. In the premium financing agreement, Mr. Jaynes assigned his right to cancel the policy to Progressive Premium Budget Company (hereafter Budget), in the event that he failed to pay installments due thereunder.

Mr. Jaynes defaulted on a payment due April

29, 1972, and Budget requested cancellation of the policy effective May 24, 1972, by authority of Mr. Jaynes' assignment to it of his right to cancel. On May 10, 1972, defendant Progressive mailed a 10-day notice of intent to cancel to Mr. Jaynes, advising him: "This amount must be paid to our office on or before May 20, 1972, or your insurance policy will be cancelled". On May 23, 1972, defendant sent a notice of cancellation to Mr. Jaynes by certified mail advising him that the policy was cancelled effective at 12:01 a.m. on May 24, 1972.

Plaintiff Farmers also filed a motion for summary judgment arguing that the above-described attempt to cancel was not effective because it did not comply with Michigan statutes. At a hearing held on February 28, 1976, only the applicability of MCL 500.3020; MSA 24.13020, was considered, and the trial court granted partial summary judgment against defendant. The pertinent statute provides:

"No policy of casualty insurance, excepting workmen's compensation, but including all classes of motor vehicle coverage, shall be issued or delivered in this state by any insurer authorized to do business in this state for which a premium or advance assessment is charged, unless there shall be contained within such policy a provision whereby the policy may be canceled at any time at the request of the insured, in which case the insurer shall, upon demand and surrender of the policy, refund the excess of paid premium or assessment above the customary short rates for the expired time; and whereby the policy may be canceled at any time by the insurer by mailing to the insured at his address last known to the insurer or its authorized agent, with postage fully prepaid, a 10 days' written notice of cancellation with or without tender of the excess of paid premium or assessment above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand and the notice of

cancellation shall state that the excess premium, if not tendered, will be refunded on demand. The cancellation shall be without prejudice to any claim originating prior thereto. The mailing of notice shall be prima facie proof of notice. Delivery of such written notice shall be equivalent to mailing. A notice of cancellation, including a cancellation notice under section 3224, shall be accompanied by a statement that the insured must not operate or permit the operation of the vehicle to which notice of cancellation is applicable, or operate any other vehicle, unless the fees required by the motor vehicle accident claims act have been paid with respect to such vehicle."

In essence, the court ruled that insurance statutes were intended to protect the public and that the statute requires 10 days notice of cancellation. It held that since defendant's notice of intent to cancel mailed May 10, 1972, did not state the effective date of the cancellation, but simply an intent to cancel in the future, the statutory requirements were not met and the attempted cancellation was ineffective. It therefore granted a partial summary judgment in plaintiff's favor.

A rehearing was held on March 31, 1976. At that hearing, defense counsel drew the court's attention to MCL 500.1511; MSA 24.11511, pertaining to cancellations by a premium finance company. That section provides in pertinent part:

"(1) When a premium finance agreement empowers the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be canceled by the premium finance company unless such cancellation is effectuated in accordance with this section.

"(2) Not less than 10 days' written notice shall be mailed to the insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within the 10-day period.

"(3) *After expiration of the 10-day period, the premium finance company may request cancellation of the insurance contract by mailing to the insurer a notice of cancellation,* and the insurance contract shall be cancelled by the insurer without requiring the return of the insurance contract. The premium finance company shall also mail a notice of cancellation to the insured at his last known address at the same time the premium finance company requests cancellation of the insurance contract.

"(4) All statutory, regulatory and contractual restrictions providing that the insurance contract may not be canceled unless notice is given to a governmental agency, mortgagee or other third party shall apply where cancellation is effected under the provisions of this section. The insurer shall give the prescribed notice in behalf of itself for the insured to any governmental agency, mortgage or other third party on or before the second business day after the day it receives the notice of cancellation from the premium finance company and shall determine the effective date of cancellation taking into consideration the number of days' notice required to complete the cancellation."

After hearing arguments of counsel as to whether § 1511 mandates that cancellation shall not be effective until 10 days after notice of cancellation had been sent to the insured, the Court held:

"The motion is denied.

"I have examined it. I don't think it adds anything. I think I will deny the motion for re-[h]earing. I think the original ruling of the Court should be pursued."

Defendant Progressive filed a claim of appeal which was returned because the partial summary judgment was not a final order under GCR 1963, 518.2.

On November 4, 1976, plaintiff filed a motion for

summary judgment for indemnity alleging that defendant Progressive was the primary carrier, since its attempt to cancel was ineffective. Progressive answered the motion for summary judgment and filed its own motion for summary judgment for failure to state a cause of action. Defendant argued that plaintiff was not a real party in interest, that actual attorney fees as opposed to taxable fees were not recoverable, and that indemnity was not available because even those jurisdictions which allow such recovery require notice to or demand on the proposed indemnitor to participate, and that was not done here.

In reply, plaintiff pointed out that it made a demand upon defendant Progressive to defend its insured driver in the underlying negligence action. At that time, defendant Progressive denied a duty to provide a defense, as well as denying coverage of the defendant therein. These facts were admitted by defendant Progressive in its answer.

On March 8, 1977, the trial court granted a final order of summary judgment against defendant Progressive for the amount of the settlement, $10,-000, plus attorney fees incurred by plaintiff in defending the underlying negligence action in the amount of $842.20. Defendant Progressive does not contest the reasonableness of the attorney fees or the amount of the settlement. Rather, it challenges the partial summary judgment concerning cancellation and the final summary judgment ordering it to indemnify plaintiff Farmers.

Defendant argues that the trial court erred in ruling that defendant's attempt to cancel its automobile liability policy with its insured was ineffective. Defendant asserts that the notice of intent to cancel constituted substantial compliance with the requirements of MCL 500.3020; MSA 24.13020, and

defendant fully complied with the requirements of MCL 500.1511; MSA 24.11511.

We hold the notice provisions provided in MCL 500.1511; MSA 24.11511, *supra,* are not applicable under the instant facts. MCL 500.1501; MSA 24.11501 provides in pertinent part:

"The provisions of this chapter shall not apply with respect to: (a) Any insurance company authorized to do business in the state or a subsidiary of an authorized insurer admitted in this state or a corporation under substantially the same management or control as an admitted authorized insurer or group of insurers, which such subsidiary, managed or controlled company is engaged in the business of financing insurance premiums on policies issued only by its parent insurer or affilliated group of insurers, subject to the provisions of subsection (3) of section 1508."

As plaintiff points out, no factual determination was made as to the applicability of chapter 15 to this case. We observe, however, that both Progressive and Budget listed the same address, the premium financing agreement was contained on the same page as the printed insurance application, and the notices of intent to cancel and cancellation were sent by defendant Progressive rather than by Budget.

Chapter 15 of the insurance code was intended to exempt from the notice requirement of § 3020 of the insurance code a premium finance company which was truly independent of any single insurer or group of affiliated insurers. If a premium finance company is not independent, but rather is effectively an extension or a branch of the insurer or affiliated insurers, the exemption would not and should not apply. If, as appears here, a premium finance company is simply a division within the

insurance company itself to handle periodic payments of insurance premiums, then the cancellation effected by the finance company is actually effected by the insurer itself, and the provisions of § 3020 would then apply. In that situation, even if the insured had contractually assigned to the premium finance company his right to cancel, the assignment would be in reality an assignment to the insurer, and could not be exercised peremptorily by the insurer because of the contrary requirements of § 3020.

Prior to the notice of cancellation sent by defendant Progressive on May 23 and effective at 12:01 a.m. the following day, the insured had no notice of the effective date of the intended cancellation. MCL 500.3020; MSA 24.13020 requires that any automobile policy must provide for cancellation at any time by the insurance company, by mailing or delivering to the insured a 10-day written notice of cancellation. This statute has been strictly and clearly construed. Another panel of this Court has held that 10 days actual notice is required before cancellation becomes effective. *Phillips v Detroit Automobile Inter-Insurance Exchange,* 69 Mich App 512; 245 NW2d 114 (1976).

It is patently unfair to permit Budget to cancel the policy involved without advance notice of the effective date of the cancellation to the insured where it was able to give such advance notice to the insurer. In fact, here, the notice of cancellation could not possibly have reached the insured prior to the effective date stated on its face. The notice of intent to cancel is not sufficient under § 3020, and the notice of cancellation could not have an effective date prior to 10 days after May 23, 1972, in which case the coverage would have applied when the accident occurred. The trial court did

not err in ruling that defendant's attempt to cancel its policy with the insured was ineffective.

Defendant next argues that the trial court erred in granting judgment to plaintiff for indemnification from defendant where the plaintiff was subrogated to the right of its insured under the insurance contract and by operation of law and had paid the entire loss in the underlying negligence action. Defendant concedes the reasonableness of the settlement and the attorney fees incurred. It contends, however, that insurance companies are not true parties in interest and may not bring an action for indemnification under these circumstances. Furthermore, defendant contends, plaintiff had a separate contractual duty to defend its own insured, and its involvement in the suit and payment of the settlement sum was due to that contractual obligation. Defendant says plaintiff failed to demand participation by defendant. Defendant claims that plaintiff is not entitled to attorney fees because it would have been involved in the previous lawsuit even in the absence of defendant's wrongful activity.

Contrary to defendant's argument, plaintiff is a real party in interest. See *United States v Aetna Casualty & Surety Co,* 338 US 366, 380–381; 70 S Ct 207; 94 L Ed 171 (1949). *Cf. Katzbauer v Barret,* 15 Mich App 253; 166 NW2d 482 (1968). The separate suit for indemnification is the preferable method of handling such a dispute between insurers, since the injured person recovers for his injuries without delay while the insurers thereafter iron out their respective liabilities.

Defendant asserts that no theory of subrogation permits plaintiff to obtain indemnification from defendant. It argues that its only duty was to its own insured, Mr. Jaynes, and "the only method by

which Farmers could claim would be by way of subrogation".

Plaintiff's claim is, of course, based on subrogation. Under its insurance contract, defendant Progressive owed a duty to defend anyone using its insured's car with his permission in case of a negligence suit arising out of such use. Plaintiff's insurance contract provided that plaintiff was subrogated to any claim which its insured had which it was required to cover. Since plaintiff's insured, Mrs. Eversole, was operating the vehicle owned by Mr. Jaynes with his express consent when she was involved in the accident on which the underlying suit was based, defendant Progressive was required to defend her and cover any losses. Because plaintiff defended Mrs. Eversole and paid the settlement sum, it was subrogated to her cause of action against defendant Progressive. The instant action between insurers for indemnification is entirely proper. See *Detroit Automobile Inter-Insurance Exchange v Detroit Mutual Automobile Ins Co,* 337 Mich 50; 59 NW2d 80 (1953).

Defendant's argument concerning whether a demand for participation in the settlement was required must also be rejected. As plaintiff points out, defendant admitted its refusal to defend or provide coverage in the underlying negligence action. In addition, defendant has specifically stated on this appeal that it does not contest the settlement amount. Therefore the rationale of securing a fair settlement suggested by defendant has no application to the instant case. Plaintiff Farmers certainly was not a volunteer and after defendant Progressive's denial of coverage and refusal to defend no notice of settlement or demand to participate in settlement was required.

Finally, defendant's contention that the award

of attorney fees was improper is also rejected. It does not appear to be disputable that plaintiff was an excess insurer, and defendant was the primary insurer. Had defendant assumed the duties which were placed primarily on it because of its position as insurer of the owned vehicle, plaintiff might not have incurred any attorney fees in defending. The primary insurer should not be permitted to profit by its wrongful refusal to defend. 1 Long, The Law of Liability Insurance, § 5.05c, pp 5-36.2, 5-37, 5-38, 5-39.

While there is a split of authority as to whether attorney fees are recoverable, *cf. USF & GG v Tri-State Ins Co,* 285 F2d 579 (CA 10, 1960), with *Continental National American Group v Pluda,* 115 NJ Sup 206; 278 A2d 540 (1971), the better rule seems to be to allow the excess insurer subrogation recovery for defense costs incurred. 1 Long, The Law of Liability Insurance, *supra.* To hold otherwise, would encourage insurers to deny coverage and subsidize refusal to defend. Unless attorney fees can be recovered, insurance companies might profit by unscrupulous tactics. We hold on these facts attorney fees are allowable as an exception to the general rule that they are only recoverable pursuant to statute or court rule. See *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 77–79; 212 NW2d 821 (1973), *citing* McCormick, Damages, § 66, p 246, for the proposition that such fees are recoverable "where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute *previous* legal proceedings". (Emphasis by McCormick.)

Affirmed. Costs to plaintiff.